UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Silvester Desmond Scott *also known as* Sylvester Desmond Scott,<br><br>Petitioner,<br><br>v.<br><br>Warden of Kershaw Correctional Institution,[1]<br><br>Respondent. | C/A No. 9:25-cv-00758-BHH-MHC<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Silvester Desmond Scott ("Petitioner"), a state prisoner proceeding pro se, seeks habeas relief pursuant to 28 U.S.C. § 2254. ECF No. 1. This matter is before the Court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 17, 18. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court advised Petitioner of the Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 19. Petitioner filed a Response in Opposition, ECF No. 24, and Respondent filed a Reply, ECF No. 25. Without seeking leave of the Court, Petitioner filed a Sur-Reply. ECF No. 26. The matter is ripe for review.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 18, be granted, and the Petition, ECF No. 1, be dismissed with prejudice.

---

[1] During the pendency of this action, Petitioner submitted a change of address indicating that he has been transferred to Kershaw Correctional Institution. ECF No. 16. Accordingly, the undersigned has amended the case caption to reflect the correct Respondent. *See* ECF No. 17 at 1 n.1 (Respondent's Return requesting update to case caption).

1

**BACKGROUND**

The procedural history as described by Respondent has not been disputed by Petitioner and is set forth as follows. Petitioner currently is in the custody of the South Carolina Department of Corrections.

**I.     State Criminal Case**

Petitioner was indicted by a Charleston County grand jury on August 3, 2015, on charges of armed robbery and possession of a weapon during the commission of a violent crime. ECF No. 17-2 at 123–26. Petitioner was accused of robbing a bank.

On March 11–14, 2019, Petitioner appeared in the Charleston County Court of General Sessions before the Honorable Roger M. Young Sr. ECF No. 17-1 at 3. Attorneys John Joseph Kozelski and Susannah Knox represented Petitioner. *Id.* Assistant Solicitors Thomas Richard Waring II and David Osborne prosecuted the case. *Id.*

During the presentation of the Petitioner's case in chief, his alibi witness—Harriet Cordero—testified on direct examination that Petitioner could not have been at the bank when it was robbed because, at that time, he was helping her with an overheated moped. ECF No. 17-2 at 513–19. During her cross-examination, the State asked Ms. Cordero how she knew when she spoke to defense counsel's investigator that the date on which Petitioner helped with her moped was the same day that the bank was robbed. She answered, "Because I was told." *Id.* at 522. The cross-examination continued:

Q. Because you were told?

A. Yes.

Q. You were told by the investigator?

A. Yes.

Q. So she's the one that fed you that information to say that your moped ran hot?

A. No, she did not feed me no –

Q. But she told you that?

A. No. She didn't tell me my moped ran hot.

Q. And she told you that happened on March the 4th, correct?

A. She told me when -- I don't know the exact date, but it was written down, though.

Q. It's written down?

A. Yes.

Q. By the investigator?

A. Yeah. I signed it.

Q. In her statement?

A. My statement. I said it.

*Id.* at 522–23. Shortly after this testimony, the trial court adjourned for the day. *Id.* at 525.

The next morning, Petitioner—who was facing life in prison without parole if convicted––chose to enter an *Alford* plea.[2] *Id.* at 530–42. Judge Young sentenced him to twenty years' imprisonment on the armed robbery, and five years on the weapons charge, to run concurrently. *Id.* at 541.

Petitioner did not appeal his guilty plea or his sentencing.

## II.    Post-Conviction Relief Action

Petitioner filed a pro se application for post-conviction relief ("PCR") on June 18, 2019, asserting the following grounds:

   a. Trial counsel was ineffective for giving Applicant bad advice[;]
   b. Trial counsel was ineffective for not investigating an eyewitness[;]
   c. Trial counsel was ineffective for not interviewing alibi witness before trial.

---

[2] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

ECF No. 17-2 at 47. Attorney James K. Falk subsequently was appointed to represent Petitioner in the PCR action.

On April 8, 2022, an evidentiary hearing was convened in Charleston County, via the Virtual Courtroom, with the Honorable R. Ferrell Cothran Jr. presiding ("PCR Court"). ECF No. 17-2 at 58–97. Assistant Attorney General Samantha J. Weidauer represented the State, and Mr. Falk represented Petitioner. *Id.* The PCR Court found that based on the statements of PCR counsel during the hearing, the issue before him was "a sole allegation that [Petitioner's] counsel was ineffective for failing to properly prepare an alibi witness to testify." ECF No. 17-2 at 102. At the end of the hearing, the PCR Court took the case under advisement. *Id.* at 95–96. The PCR Court subsequently issued a written order, dated March 31, 2023, and filed April 6, 2023, dismissing the PCR application. *Id.* at 98–122. Petitioner appealed.

On behalf of Petitioner, Attorney Wanda Carter, Deputy Chief Appellate Defender for the South Carolina Commission on Indigent Defense Division of Appellate Defense, filed a petition for writ of certiorari in the Supreme Court of South Carolina on August 2, 2023, and raised the following issue:

> Trial counsels erred in failing to prepare an alibi witness to testify prior to trial because the alibi witness'[s] testimony at trial was woefully inadequate and undermined petitioner's alibi defense so severely that the trial ended abruptly thereafter, and petitioner was immediately coerced into pleading guilty as charged by default despite the fact that the state's case, which was largely circumstantial, lacked substantial circumstantial evidence sufficient to have secured convictions on the charges filed against petitioner.

ECF No. 17-3 at 5.

The Supreme Court of South Carolina transferred the PCR appeal to the South Carolina Court of Appeals on January 4, 2024.[3] ECF No. 17-5. The Court of Appeals denied the Petition on

---

[3] Pursuant to South Carolina Appellate Court Rule 243(l), "The Supreme Court may transfer a case filed under this rule to the Court of Appeals."

4

October 9, 2024. ECF No. 17-6. The Court of Appeals issued the Remittitur on October 25, 2024. ECF No. 17-7.

On or about January 21, 2025, Petitioner sought federal habeas relief by signing his Petition and giving it to prison officials for mailing. ECF No. 1; *see Houston v. Lack*, 487 U.S. 266 (1988) (stating that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the district court).

## STANDARDS OF REVIEW

### I. Summary Judgment Standard

Summary judgment is appropriate if a party "shows there is no genuine dispute as to any issue of material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under the framework established in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Id*. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id*. at 324.

Under this standard, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Id.* at 252. Likewise, conclusory or speculative allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. *Celotex Corp.*, 477 U.S. at 322.

Additionally, pro se filings are to be "liberally construed" and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). However, the requirement of liberal construction does not mean the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

## II.     Federal Habeas Review under 28 U.S.C. § 2254

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, in considering Petitioner's claims, the Court's review is limited by the deferential standard of review set forth in 28 U.S.C. § 2254(d). *See Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under § 2254(d),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

28 U.S.C. § 2254(d); *see also Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (explaining federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding"). A state court's decision is contrary to clearly established federal law if that court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Evans*, 220 F.3d at 312 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision unreasonably applies clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. (quoting *Williams*, 529 U.S. at 413).

Because "review under § 2254(d)(1) focuses on what a state court knew and did," this Court measures the reasonableness of the state court's decision based on the information in the record before the state court. *Valentino v. Clarke*, 972 F.3d 560, 575 (4th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011)). "Likewise, § 2254(d)(2) provides for a limited review of factual determinations in light of the evidence presented in the State court proceeding[;] [thus,] [t]his backward-looking language similarly requires an examination of the state-court decision at the time it was made." *Id*. (citation and internal quotation marks omitted).

Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

7

unreasonable." *Williams*, 529 U.S. at 410. Further, factual findings "made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural default/bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before a petitioner has appropriately exhausted available state-court remedies or after a petitioner has otherwise defaulted/bypassed seeking relief in the state courts will be dismissed absent unusual circumstances, as detailed below.

### A. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies. *See* 28 U.S.C. § 2254(b)–(c). The statute requires that, before seeking habeas corpus relief, a petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). Stated plainly, in the interest of giving state courts the first opportunity to consider alleged constitutional errors in state proceedings, a § 2254 petitioner is required to "exhaust" all state remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law

requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will generally result in the application of a procedural bar by the South Carolina Supreme Court. *See Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009) (discussing procedural bar and noting the "general rule" in South Carolina is that where a party fails to file a Rule 59(e) motion, the argument is forfeited).

Furthermore, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45. In South Carolina, a claim is not procedurally barred from review in this Court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals. *See Remedies in Criminal and Post–Conviction Relief Cases*, 321 S.C. 563, 564, 471 S.E.2d 454 (S.C. 1990) ("[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.").

### B. Procedural Default/Bypass

When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. *Smith v. Murray*, 477 U.S. 527, 533 (1986). This situation is sometimes referred to as procedural bypass, as the petitioner has "bypassed" his state remedies. In other

9

words, procedural default/bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Procedural default/bypass can occur at any level of the state proceedings, if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See, e.g.*, *Evans v. State*, 611 S.E.2d 510, 515 (S.C. 2005) (noting an "issue or argument which is neither raised at PCR hearing nor ruled upon by the PCR court is procedurally barred from appellate review" (citation omitted)). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984). If a federal habeas petitioner has procedurally defaulted his opportunity for relief in the state courts, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *overruled on other grounds by United States v. Barnette,* 644 F.3d 192 (4th Cir. 2011); *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991). Thus, where the state court has not had the opportunity to apply its own procedural bar, the federal court will nevertheless bar the claim where application of the bar is clear. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989).

### C. Cause and Actual Prejudice

Notwithstanding the foregoing, a federal court may consider claims that have not been

10

presented to the highest South Carolina court with jurisdiction in very limited circumstances. *See Granberry v. Greer*, 481 U.S. 129, 131 (1987). Indeed, because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the state's courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008).

A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray v. Carrier*, 477 U.S. 478, 488–97 (1986). Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Id.* at 496.

## DISCUSSION

Petitioner raises the following ground for relief in his Petition:

**Ground One**: Trial counsels failed to prepare alibi witness to testify at trial.

**Supporting Facts**: Petitioner's constitutional rights was violated due to trial counsels ineffective assistance. Also petitioner's constitutional right to due process was violated due to trial counsels lack of preparation with alibi witness. Trial counsel admitted to never speaking to alibi witness before trial, and co-counsel admitted to only speaking to alibi witness over the phone almost 5 yrs after the incident, and not preparing witness for BASIC questions from the State.

11

ECF No. 1 at 5.

In the Return and Memorandum of Law in support of Respondent's Motion, Respondent notes that Petitioner exhausted his PCR remedies and that the Petition was timely filed under 28 U.S.C. § 2244(d)(1). ECF No. 17 at 6–9. Respondent also states that "Ground One was raised and ruled on in the PCR action," was also raised in the PCR appeal, and "is exhausted and ripe for deferential review." *Id.* at 14. Finally, Respondent argues that the entirety of Petitioner's Ground One fails on the merits. *Id.* at 15–18.

## I.   MERITS OF GROUND ONE

Respondent argues that Petitioner has failed to satisfy his burden under AEDPA review, that Ground One is without merit, and that the Petition should be dismissed. ECF No. 17 at 15–18. Upon review, the undersigned agrees.

### A.  The *Strickland* Test

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the U.S. Supreme Court set forth a two-part test for courts to use to determine claims of ineffective assistance of counsel. A meritorious ineffective assistance of counsel claim must show two elements: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687–96.

As to the first prong, a court's evaluation of counsel's performance under this standard must be "highly deferential," so as not to "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal

quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008). To establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

The two-part test enunciated in *Strickland* applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in *Strickland*], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted). Thus, a "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.

The Supreme Court has explained that a "state court's determination that a claim lacks

13

merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Thus, the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Valentino*, 972 F.3d at 580 (citation and quotation marks omitted). Accordingly, "a federal court may grant relief only if *every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 739–40 (2021) (citation and internal quotation marks omitted).

### B. The PCR Court's Decision

The PCR Court found Petitioner's claims of ineffective assistance of counsel to be without merit. ECF No. 17-2 at 98–122. In so doing, the PCR Court applied the *Strickland* standard. *Id.* As an initial matter, the PCR Court reviewed the plea hearing transcript and found that Petitioner "voluntarily, knowingly, and intelligently plead[ed] guilty, and no evidence was presented to the contrary." *Id.* at 118.

Regarding Petitioner's claim that counsel was ineffective for failing to investigate and prepare the alibi witness for trial, the PCR Court found as follows:

> Plea Counsel testified Ms. Cordero was interviewed and her statement was taken close to the time of the crime (about two weeks after the incident), which was five years prior to trial. Additionally, prior to trial, Ms. Knox, second chair to Plea Counsel, spoke with Ms. Cordero to ensure her testimony was the same, and prepared her for cross-examination. Based on both of these conversations with Ms. Cordero, Ms. Knox and Plea Counsel had no reason to believe Ms. Cordero would give unfavorable testimony or was incompetent to testify. Ms. Knox testified she did not recall specifically preparing Ms. Cordero how to answer questions concerning her knowledge of the date, but she had no reason to believe Ms. Cordero would have been confused by this line of questioning.
>
> Additionally, Plea Counsel testified cross-examination significantly changed the outcome of Applicant's case, and he strongly advised Applicant to take a plea. *Strickland* requires trial counsel must be given leeway to make strategic reasonable decisions, and where counsel articulates a valid reason for his action or inaction,

> counsel's performance is not found ineffective. . . . Plea counsel testified that prior to cross-examination he believed Applicant was winning his case. The State had only circumstantial evidence, no eyewitnesses, and Applicant had a strong alibi witness which had been interviewed and prepared for trial. Ms. Cordero's testimony was unproblematic during direct examination but was problematic on cross-examination when she became frustrated and stated the defense investigator had told her the date of the incident, making it seem as if Plea Counsel and Ms. Knox had fed Ms. Cordero testimony[.] This was unexpected based on the defense team's prior interactions with Ms. Cordero, which did not given [sic] any inference that she would testify this way when challenged. It is expected on cross-examination that the opposing party will test a witness's credibility, or test the accuracy of the witness's testimony or recollection and extent of knowledge. Plea Counsel and Ms. Knox fulfilled their duty in investigating the facts and circumstances of Applicant's case, and interviewing Ms. Cordero, the only possible witness the[y] could find. The cross-examination merely put Ms. Cordero to the test, a test she failed on her own.
>
> This Court finds Applicant has failed to establish Plea Counsel was ineffective. Plea Counsel investigated witnesses to the extent they were available, and no eyewitnesses were available, as evidenced by the fact the State had no eyewitnesses either. Plea Counsel made themselves aware of the facts and circumstances of Applicant's case, and were able to articulate strategic reasonable decisions, meaning Applicant cannot meet the first prong of *Strickland*.
>
> Additionally, Applicant cannot show resulting prejudice. Plea Counsel interviewed Ms. Cordero near the time of incident, when it was fresh in her mind, and interviewed her a second time close to the time of trial, also preparing her for cross-examination. Applicant cannot claim prejudice as a result of Plea Counsel's performance when the State merely used cross-examination for its purpose with successful results. Therefore, this Court finds Applicant could not prove ineffective assistance of counsel, and **DENIES** and **DISMISSES** his claims with prejudice.

ECF No. 20-2 at 120–21.

### C. Analysis

Upon review, the undersigned finds that the PCR Court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580 (noting the question is not whether a federal court considers the state court's determination under the *Strickland* standard to be incorrect, but whether that determination was unreasonable). The PCR Court applied the *Strickland* standard, which is the applicable

15

Supreme Court precedent. Moreover, the record fails to demonstrate that the PCR Court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

In his Response to Respondent's Motion, Petitioner argues that "counsel did not meet or properly prepare[] the witness in person, instead conducting a brief telephone interview nearly 5 years after the events in question. . . . [T]rial counsel's decision to prepare the alibi witness solely by telephone is strategically deficient." ECF No. 24 at 1–2 (citing *State v. Earp*, 571 A.2d 1227 (Md. 1990)). Petitioner maintains that it was "objectively unreasonable for counsel to rely solely on a telephone interview, especially when the defense's entire theory rest[ed] on one alibi witness." *Id.* at 2. Petitioner also contends that counsel should have anticipated that the alibi date would be the focal point of cross examination and that the failure to prepare the witness for a "basic obvious question" constitutes "deficient performance due to inadequate preparation under *Strickland*." *Id.* at 3–4. These arguments are unpersuasive.

As an initial matter, *Earp* is neither binding precedent nor relevant, as it was a direct appeal in Maryland state court—not a post-conviction review or habeas case—and it addressed tactics used by a prosecutor in preparing prospective witnesses for trial. *See Earp*, 571 A.2d at 1234–35 (finding no fault with trial judge's decision not to exclude witness testimony but explaining appellate court's decision should not be understood as endorsing the action of the prosecutor in preparing the witnesses). Moreover, *Earp* does not stand for the proposition that witness preparation must take place in person, but it does caution attorneys to avoid suggesting to witnesses what their testimony should be:

> Attorneys have not only the right but also the duty to fully investigate the case and to interview persons who may be witnesses. A prudent attorney will, *whenever possible*, meet with the witnesses he or she intends to call. *The process of preparing a witness for trial*, sometimes referred to as "horse-shedding the witness," *takes*

16

>   *many forms*, and involves matters ranging from recommended attire to a review of the facts known by the witness. . . . It is permissible, in a pretrial meeting with a witness, to review statements, depositions, or prior testimony that a witness has given. It also may be necessary to test or refresh the recollection of the witness by reference to other facts of which the attorney has become aware during pretrial preparation, but in so doing the attorney should exercise great care to avoid suggesting to the witness what his or her testimony should be.

*Id.* (emphases added); *cf. Oken v. Corcoran*, 220 F.3d 259, 269 (4th Cir. 2000) (affirming denial of habeas petition and finding that "trial counsel could not have specifically instructed the doctors to avoid characterizing" a particular condition "as incurable, since it would have been improper to have instructed the doctors as to the specific content of their testimony").

It is well established that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see Emmett v. Kelly*, 474 F.3d 154, 161 (4th Cir. 2007) (explaining that "counsel's decision not to investigate or to cease investigation in a particular area 'must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments'" (quoting *Strickland*, 466 U.S. at 691)). However, as the Fourth Circuit has explained, the "Sixth Amendment . . . does not always compel counsel to undertake interviews and meetings with potential witnesses where counsel is familiar with the substance of their testimony." *Huffington v. Nuth*, 140 F.3d 572, 580 (4th Cir. 1998); *see Boseman v. Bazzle*, 364 F. App'x 796, 809 & n.8 (4th Cir. 2010) (finding petitioner failed to show deficient performance under *Strickland* where "trial counsel's knowledge of the alibi was based not only on his private investigator's report summarizing her interview with one of Boseman's potential alibi witnesses, but also his own interviews of 'at least some' of those witnesses"). Moreover, the question before this federal court "is not whether counsel's actions were reasonable" but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

At the PCR hearing, lead counsel testified that although he never spoke to Ms. Cordero

17

before trial, his investigator spoke to Ms. Cordero two weeks after Petitioner was arrested and got Ms. Cordero's statement at that time. ECF No. 17-2 at 76–77, 85–86. The investigator told lead counsel shortly before trial that the investigator had been in contact with Ms. Cordero, who still remembered the event "like it was yesterday." *Id.* at 75, 86. Additionally, lead counsel's co-counsel testified that she spoke to Ms. Cordero on the phone within the week prior to trial to make sure she remembered the details that were in the statement she had given five years previously and to prepare her for the State's cross-examination, though co-counsel did not recall preparing Ms. Cordero for the line of questioning that tripped her up at the trial. *Id.* at 91–92. Co-counsel testified that Ms. Cordero told the same story during direct examination that they were expecting her to tell and that they had no reason, prior to cross, to believe that Ms. Cordero would give unfavorable testimony. *Id.* at 93–94. Thus, the evidence from the PCR hearing shows that although lead counsel did not speak to Ms. Cordero himself before trial, both his investigator and co-counsel did, and their investigation and preparation of Ms. Cordero was not limited to a brief telephone interview five years after the event.

In the PCR decision, the PCR Court included a detailed summary of the testimony from the PCR hearing, ECF No. 17-2 at 102–110, which is supported by the hearing transcript, *id.* at 60–96. Petitioner has not shown that the PCR Court's decision was based on an unreasonable determination of the facts.

Nor has Petitioner shown that the PCR Court's determination under the *Strickland* standard was unreasonable. *Valentino*, 972 F.3d at 580. In applying prong one of the *Strickland* analysis, the PCR Court found that "Plea Counsel and [co-counsel] fulfilled their duty in investigating the facts and circumstances of Applicant's case, and interviewing Ms. Cordero, the only possible witness the[y] could find. The cross-examination merely put Ms. Cordero to the test, a test she

18

failed on her own." ECF No. 17-2 at 121. The PCR Court concluded that counsel "made themselves aware of the facts and circumstances of Applicant's case, and were able to articulate strategic reasonable decisions, meaning Applicant cannot meet the first prong of *Strickland*." *Id.*

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that the PCR Court's conclusion that trial counsel's performance was not deficient is neither unreasonable nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Emmett*, 474 F.3d at 161. Thus, Petitioner has failed to meet his burden under § 2254 as to his Ground One assertion that the PCR Court erred in denying his claim of ineffective assistance of counsel. *See, e.g.*, *Ward v. United States*, 982 F.3d 906, 913–14 (4th Cir. 2020) (finding it unnecessary to reach the merits of a petitioner's claim on both *Strickland* prongs where the claim clearly failed on one prong); *Merzbacher v. Shearin*, 706 F.3d 356, 365 (4th Cir. 2013) (explaining "that 'there is no reason for a court deciding an ineffective assistance claim' to resolve 'both components of the inquiry if the defendant makes an insufficient showing on one'" (quoting *Strickland*, 466 U.S. at 697)). Accordingly, the undersigned recommends that summary judgment be granted.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Respondent's Motion for Summary Judgment (ECF No. 18) be **GRANTED** and that the Petition be **DISMISSED with prejudice.**

December 8, 2025  
Charleston, South Carolina

Molly H. Cherry  
United States Magistrate Judge

**The parties are directed to the next page for their rights to file objections to this recommendation.**

19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Robin L. Blume, Clerk
>United States District Court
>Post Office Box 835
>Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).